BARNETT R. WILLIAMS et al., Respondents, v. SAMUEL G. BEATTY, Appellant.

Kansas City Court of Appeals, November 1, 1909.

1. HIGHWAYS: Changing Roadway. An abutting landowner on a public road constructed on an embankment had no right to obstruct a drainage ditch running beside the embankment and on the right of way without complying with the statute (R. S. 1899, sec. 9414), by moving the embankment to the other side of the ditch and on his own land and by placing culverts in the embankment to collect and overflow land on the other side of the road surface water which formerly ran through the ditch.

2. ————: Injunction: Special Damage. Where the change in the road and ditch would not only be detrimental to the general public but would cause special damage to the land on the other side of the road, landowners on that side may resort to injunction to prevent the change, such as the right of ingress and egress.

Appeal from the Macon County Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Guthrie & Franklin* for appellant.

(1)   Our statute provides a complete scheme for grading public roads; clearly set forth in Acts of General Assembly, approved March 26, 1903, secs. 1 to 12

inclusive, at pages 148, 149, 150.   (2)   The grading of
the public road, by Williams, one of the plaintiffs here-
in, was an attempt on his part, to exercise the power of
eminent domain, which can only be done by a strict
compliance with the statute.   Plaintiff made no pre-
tense to follow the statute, in constructing the grade
he constructed, or to have any authority or legal right
to construct or maintain the same.   He never for a mo-
ment stopped to inquire whether the grade would dam-
age defendant and others or not.   Nor did he in any
manner seek to invoke the law, or its guidance; not-
withstanding, the above statute furnishes an exclusive,
distinct and adequate remedy.   In re Grading Bledsoe
Hill, 200 Mo. 630.   (3)   The right of defendant to drain
his land through and over the farm and land of plain-
tiffs, under the writing of date October 6, 1900, being
enjoyed and known to plaintiff, B. R. Williams, when
he purchased the farm hereinbefore mentioned, consti-
tuted an easement, running with the land, that could
not be destroyed by plaintiffs without putting the de-
fendant in *statu quo*.   Jones, Law of Real Property
in Conveyancing, sec. 874, page 874, sec. 1663; Fergu-
son v. Spencer, 127 Ind. 66, 25 N. E. 1035; Joseph v.
Wilde, 45 N. E. 467.   (4)   An injunction should have
been granted to defendant on his answer and cross-bill,
for the destruction of convenient access to his property,
as well as to restore the original culvert to its place in
the road, and thereby permit the water to flow across
the road, as it had usually and ordinarily done.   Elliott
on Roads and Streets, pages 353, 537; Ross v. Thomp-
son, 78 Ind. 96.

*Dysart & Mitchell* and *R. W. Barrow* for respond-
ents.

(1)   Defendant's attempt to move the right of way
of the road over on the north side of the ditch onto
land of Beatty, was clearly illegal and properly re-
strained.   No order of the county court had been made

changing the location of said right of way. R. S. 1899, sec. 9414. (2) The making of a deed by Beatty to the county does not make a change of road. The county court had never made any order accepting such land as a road nor ordering such a change. A public road can be vacated only as provided by the statute. State v. Wells, 70 Mo. 635; State v. Rhodes, 35 Mo. App. 360. (3) Even a mere order of instruction of the county court to the road overseer will not vacate a road, but the same must be done on petition and notice. State v. Walls, 70 Mo. 635. (4) An obstruction in a public road or street is both a public and private nuisance and an abutting landowner is entitled to maintain injunction. Schoop v. St. Louis, 117 Mo. 131. (5) It is the policy of the law to encourage the donation of work on the roads, especially by the abutting landowners. Session Acts (Mo.) 1907, p. 410, sec. 9696, provides as follows: "Whenever the citizens interested in the permanent improvement of any highway of public importance shall by donation properly ditch, drain, gravel, drag, embank or otherwise improve said highway such road overseer may contribute and perform work thereon equal in value to such donation," etc. Session Acts (Mo.) 1905, p. 275, sec. 9696, provides that when any person does more work on the public road in one year than the amount of his taxes, he shall receive a receipt therefor which shall entitle him to be credited for same on his road tax for the ensuing year. It is a well known fact that it has been the policy of the Legislature and people for many years to use all means to improve the public road system and to encourage the donation of work and funds for that purpose and that much work is donated by landowners to the roads both to benefit the roads and to improve their farms. In this case the county court personally, the road overseer and many witnesses of the neighborhood highly approved Williams' raising of the grade, while Beatty alone objects.

JOHNSON, J.—This is an injunction suit brought by the owners of a farm in Macon county to restrain defendant, the owner of an adjoining farm, from interfering with the public road and drainage ditch separating the two farms. Both farms are in the valley of the Chariton river on the east side of that watercourse, and extend eastward to the hills. That of plaintiffs is on the south side of the public road which runs east and west from the river to the hills and is in sections 34 and 35, township 59, range 16. The farm of defendant is on the north side of the road in sections 26 and 27. From the hills westward the roadway, for a distance of about half a mile is sixty feet wide, thence to the river, a distance of between a quarter and a half of a mile, it is eighty feet wide. At the time this suit was begun, the road had been improved by the construction in 1897, of an embankment over the bottom land by which the traveled way was elevated to a height sufficient to insure a good road in bad weather. A drainage ditch had been dug on the north side of the embankment and on the right of way from the hills to the river, to carry off the water, flowing in two streams that come out of the hills and unite at the northeast corner of plaintiffs' land. Before the construction of the ditch, the stream formed by this junction flowed in a northwest course on to the land of defendant, where it became diffused into a chain of ponds, swales and marshy places, that extended first northwesterly, then curved around to a southwest course until it passed from defendant's land to that of plaintiffs, at a point nearly a half mile west of its place of entry on defendant's land. After the drainage ditch was built, defendant, by running out auxiliary ditches from it, drained these ponds and low places into the drainage ditch, and we think the evidence shows that defendant's farm was greatly benefited by these improvements and was not subjected to any additional servitude by them, though it appears that the flow of surface water from his land

to that of plaintiffs was stopped. The threatened acts
of defendant, to prevent which this suit was brought,
are these: Professing to have authority from two of
the road commissioners so to do, he was about to change
the road entirely by moving the embankment north of
the drainage ditch and on to his own land, and by put-
ting culverts in the embankment in a way to collect and
throw on plaintiffs' land surface water which now flows
through the drainage ditch. What had been done and
is threatened to be done by defendant appears in the
following extract from the judgment entered by the trial
court:

"And the court finds from the evidence that there
is a public road duly established and passing on or
near the line between the northwest quarter of the north-
west quarter of section 35, and the northeast quarter
and the east half of the northwest quarter of section
34, township 59, range 16 on the south, and the south-
west quarter of the southwest quarter of section 26, and
the southeast quarter and the east half of the south-
west quarter of section 27, township 59, range 16, on
the north; that near all of the said distance the said
road passes over bottom lands of the Chariton river;
that at the time of the institution of this suit the said
road was well graded up for nearly all of said distance
so as to make a good, permanent road, which was prac-
tically above high-water mark, and that at the time of
the institution of this suit the said portion of said
road was in better condition than it had ever been since
it had been laid out and established; that the road right
of way throughout near all of said distance was about
eighty feet wide; that the said dump or grade was some-
what to the south of the center of said road and that a
ditch sufficient to carry the water had been made on the
north side of said road to the river, which ditch was
sufficient to carry the waters falling and collecting on
the north side of the said roadway; that at the time of
the institution of this suit, the natural and best course

for the waters falling and collecting on the north side of the said grade and roadway was on the side of the said graded roadway to the Chariton river, and that such waters left to themselves would find their way to the Chariton river on the north side of the said roadway; and through the ditch on the right of way on the north side of said grade; that the said right of way has ample width for a public road and also for the ditch to carry all of said waters.

The court further finds from the evidence that at the time of the institution of this suit, the defendant constructed and was maintaining a levee or levees across the said ditch to the north side of the said graded way, so as to hinder the water from flowing in the said ditch, and that the said defendant was threatening to and proceeding to cut and injure the said graded roadway and dump and to place culverts in and across the said graded roadway, and to force the water through the same onto plaintiffs' land; that said acts were an injury both to the said roadway and to the plaintiffs herein and their lands south of the said roadway.

And the court further finds from the evidence that the defendant, without any legal right to do the same, was threatening and attempting to move a portion of the said established roadway off of the established right of way thereof where the said road passes over the north side of the northwest quarter of the northwest quarter of section 35, township 59, range 16, and place the same on the south side of the northwest quarter of the southwest quarter of section 26, township 59, range 16; that no petition had ever been presented to the county court, as the law requires, asking for such change of the public road aforesaid; that the said acts of the defendant threatening to be done by him immediately, would be to the great injury and annoyance and expense of the public, and to the great injury and damage of the plaintiffs."

Following these findings of fact which appear to

be well supported by evidence, the court adjudged "that the temporary injunction granted in this cause be made perpetual and that the defendant and his servants be both enjoined and restrained from filling or damming up and obstructing the ditches on the right of way of the said road, and from making or maintaining any levee or levees on said right of way, and from cutting, injuring or destroying the grade or dump of the said road or any part thereof, and from removing the said roadbed or grade from said right of way or from its present position and condition, and from putting any culverts or openings through the said road grade or dump, so as to force, or attempt to force waters across said right of way on to plaintiffs' land and from making or maintaining any ditches or levee or dump in any way on the said right of way of said road, so as to turn the water flowing along said right of way on plaintiffs' land, and from filling up or impeding the flow of the water in the ditches upon the said right of way."

We adopt the view of the law of the case thus applied by the trial court. Here we find established by constituted authority a good public road and a drainage ditch obviously placed in the best position to carry to the river the surplus water of that drainage zone at a minimum of damage to the surrounding lands, including the farm of defendant. Further, we find defendant, assuming to act under authority received from two of the road commissioners, has obstructed the ditch and is threatening to change the road from the present right of way and to put in culverts in a manner to collect and precipitate surface water in a body on the land of plaintiffs. Such acts would be nothing short of an arbitrary exercise by defendant of the power of eminent domain, since they would be wholly unsupported by legal authority.

Under the provisions of section 9414, Revised Statutes 1899, et seq., an established public road may be vacated or changed only by order of the county court in

a proceeding complying with the requirements prescribed. [State v. Wells, 70 Mo. 635; State v. Rhodes, 35 Mo. 360.] No such order was made in the present case and defendant's proposed interference with the road and ditch were wholly without legal justification. As it clearly appears that if carried into effect, the threatened changes not only will be detrimental to the general public but will inflict special damage to plaintiffs' land, a proper case is presented for interposition by a court of equity. "An abutting property-owner has the same right to the use of the street that the public have and in addition thereto, he has rights which are special to himself, as the rights of ingress and egress and this right is a property right which he may protect. [Ferrenbach v. Turner, 86 Mo. 416; Glaessner v. Brewing Assn., 100 Mo. 508.] An obstruction in a street or highway may be both a public and a private nuisance and in such cases the private citizen who is specially injured may have injunctive relief." [Schaff v. City, 117 Mo. l. c. 135.]

It is argued by defendant that plaintiffs do not come into a court of equity with clean hands because of the fact that without authority they removed culverts and raised the grade of the embankment sometime before defendant initiated his project of changing the road. It appears from the evidence that work of this character was done by plaintiffs without formal authority but it was orally approved and accepted by the members of the county court. We concede that plaintiffs were trespassers in doing that work, but we do not sanction the contention of defendant that a prior trespass on the public highway committed by plaintiffs is a justification of defendant's purpose to commit a similar trespass. By whatever means the public road was placed in its present condition, no private person possesses the right to change the road without formal permission of the constituted authorities. The issue before us is the legality of the proposed acts of defendant, not the legality of

what others may have done in the past. "The maxim
that he who seeks equity must do so with clean hands
applies only to conduct related to the subject of litiga-
tion." [Hingston v. Montgomery, 121 Mo. App. 457.]
The prior trespass of plaintiffs was an entirely different
matter from that now before us. If defendant would
have the road changed let him proceed in a lawful
manner to accomplish his end. The law does not tol-
erate the employment of the strong hand by an indi-
vidual to right his grievances and since defendant has
resorted to the strong hand and plaintiffs are specially
interested in the subject of the aggression, we do not
think the past wrongs committed by plaintiffs should
deprive them of injunctive relief.

Further, it is argued by defendant that the action
should fail because of a parol easement or license given
defendant in 1900 by plaintiffs' grantor. The instru-
ment executed by the then owner of the land now owned
by plaintiffs is as follows:

"ETHEL, Mo., Oct. 6, 1900.

"This entitles S. G. Beatty to construct a drain
ditch through that portion of the N. E. 1-4 of Sec. 34,
township 59, R. 16 Macon County, State of Mo. in such
manner as the said S. G. Beatty should direct. It is
agreed that the undersigned owner of said land above
described shall bear no part of expense of above men-
tioned ditch.

"J. N. FLETCHER."

We do not think this instrument, if binding on
plaintiffs, has any bearing on the present controversy.
The issue here is not the right to maintain an estab-
lished drainage ditch on the land of plaintiffs but, as
we have shown, is the asserted claim of defendant that
he has the right to change a public road without author-
ity conferred in the manner prescribed by statute. But
the instrument invoked is worthless as an aid to defend-
ant's position for another reason. It was without con-
sideration and was not acknowledged and recorded. It

was a mere parol license, revocable at the will of the licensor and his grantees. [Dunham v. Joyce, 129 Mo. 5.] It was not a covenant running with the land, nor did it constitute an incumbrance that prevented the conveyance of a clear fee simple title by Fletcher to plaintiffs.

The cause was tried without error and manifestly the judgment is righteous. Accordingly, it is affirmed. All concur.