## L. P. WRIGHT, Respondent, v. R. B. BROWN, Appellant.

Springfield Court of Appeals, April 1, 1912.

1. FENCES: Tearing Down Fence: Action for Penalty: License: Revoking License to Maintain Fence: Notice.  In an action under section 5449, Revised Statutes 1909, for the penalty and damages which plaintiff claimed accrued to him on account of the defendant tearing down a fence enclosing plaintiff's field, it appeared that the fence had been constructed by the plaintiff on defendant's land and the defendant had given plaintiff three or four days' notice to remove it; that the fence contained only nine panels and could have been removed in

a little while, *held*, that even if defendant had given plaintiff permission to erect the fence on his land, it was at most but a mere license, that could be revoked upon giving the plaintiff reasonable notice to remove the fence, which was done in this case, and plaintiff was not entitled to recover.

2. **NOTICE: Reasonable Notice.** The question as to what is a reasonable notice depends upon the circumstances in each case.

Appeal from Pulaski Circuit Court.--*Hon. L. B. Woodside,* Judge.

REVERSED.

*C. H. Davis* and *C. H. Morgan* for appellant.

If it be conceded that defendant gave plaintiff a parol license to build the fence on his (defendant's) land, the defendant had the right at any time to revoke the license and to tear down the fence and the court erred in giving instruction No. 3 of its own motion. Pitzman v. Boyd, 111 Mo. 387; Desloge v. Pearce, 38 Mo. 588; Fowler v. Delapin, 78 Oh. St. 279, 87 N. E. 260; Crosdale v. Lanigan, 129 N. Y. 604, 26 Am. St. Rep. 557; Batchelor v. Hibbard, 58 N. H. 269, 31 Am. St. Rep. 715.

*Frank H. Farris* and *I. W. Mayfield* for respondent.

(1) The continued enjoyment of a license should depend upon the will of the licensor and the power to revoke is undoubted. But if in the exercise of the authority the licensee has taken property of his own upon the land, as, for example where he erects a building, a reasonable time must be given the licensee within which to remove his property. Tiedeman on Real Property, p. 498, sec. 652; 25 Cyc. 647, 652; Desloge v. Pearce, 38 Mo. 599; Pitzman v. Boyce, 111 Mo. 398; Wheeler v. Stock Yards, 60 Mo. App. 269.

GRAY, J.—This action was instituted before a justice of the peace in Pulaski county, under section 5449, Revised Statutes 1909, to recover the penalty and damages prescribed therein. The cause was appealed to the circuit court and tried before a jury, resulting in a verdict for the penalty and $50 actual damages, and judgment was rendered for the penalty and double damages, and the defendant appealed.

.The parties were owners of adjoining tracts of land on the Gasconade river. The plaintiff, in enclosing his land, used the river as a natural barrier in forming a part of his inclosure, by running his fences, at the point where they touched the river, out into the water. A part of his fence was old, and hogs were breaking through and destroying his crops.· He claimed the hogs were not entering at the points along the river bank, but at places where his field was enclosed by a rail fence which had become old and rotten; that to avoid this, and by the permission of defendant, he made some · new fencing across a draw between two natural bluffs, which were also used in connection with his fence already constructed, and which, with the river front and other fence, made an inclosure of his field and prevented hogs from getting in and destroying his crops.

The fact that the defendant threw down a part of the new fence constructed between the said bluffs and left the same down so that hogs entered into plaintiff's field and destroyed a part of his growing crop, was admitted. The defense was, that the new fence was erected on defendant's premises without his consent, and that the defendants' stock had been in the habit of coming home along the edge of the bluffs, and when the plaintiff fenced between the same, his stock's path was closed, and that he notified the plaintiff that the fence was on his (defendant's) land, and a few days thereafter he threw it down in order that his stock might pass.

There were only about nine panels of the fence
in controversy, and the evidence on the part of plain-
tiff shows that for sometime prior to September 5,
1910, defendant's hogs had been getting into his field
and destroying his corn; that the defendant had said
if plaintiff would build the fence between the bluffs,
it would protect his crop; that Monday morning, plain-
tiff did construct the fence between the bluffs, and
at the time believed it was on his own land; that a day
or two afterward, he saw the defendant, who told him
the fence was on his land, and that he had no right to
put it there, and he was going to throw it down; that
on the following Saturday, the defendant did remove
the fence, and on account thereof, hogs again entered
the plaintiff's field and destroyed a part of his crop.
The defendant claimed, and offered testimony tend-
ing to prove that the fence was erected on his land;
that he did not give the plaintiff permission to erect
it, and that a few days before he removed it, he noti-
fied plaintiff that it was on his land and that he was
going to remove it, and that he did remove it a few
days later. He also offered testimony tending to
prove that for sometime prior to the time that he re-
moved the fence, hogs and other stock had been en-
tering upon plaintiff's premises on account of the con-
dition of his fence, and that a part of the damages
sued for was caused thereby.

There is no claim by plaintiff in this court that
the fence was erected on his land, and in the trial court
no testimony was offered by him· tending to prove
that issue. This being true, the real question is: Has
the plaintiff a cause of action under the statute? He
admits that within a day or two after he had erected
the fence, the defendant told him it was on his land,
and that he was going to remove it, and there is no
evidence that plaintiff took any steps to remove the
fence, or that he intended to remove the same. There
were only nine panels and it could have been removed

in an hour. The statute is penal, and must be strictly construed.

While the defendant denied he gave plaintiff permission to erect the fence, yet in passing upon the demurrer, the plaintiff's evidence alone must be looked to, and therefore, we shall take it as established that such permission was given. It was only a license, however, revokable at the pleasure of the defendant, as it was a mere permissive license without any consideration passing, and having for its basis a mere act of neighborly accommodation or good will. [Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104; Dunham v. Joyce, 129 Mo. 5, 31 S. W. 337; Lead Company v. White, 106 Mo. App. 223, 80 S. W. 356.]

The respondent says that even though the right was a mere license, yet the plaintiff having acted on it and erected his fence, the defendant had no right to revoke it and remove the fence without giving him reasonable notice. Granting this to be true, it does not help the plaintiff's case. It stands admitted that the notice was given three or four days before the fence was removed, and plaintiff made no effort to remove the same, although to do so would have required but little time. There is no claim on the part of the plaintiff that he intended to comply with the defendant's request, but he testified that at the time he erected the fence, he thought it was on his own land. But when it was ascertained that the fence was on defendant's land, then its erection was justified, on the ground that defendant had given plaintiff a license to construct the same. This license amounted to nothing more than an excuse for the act, which would otherwise have been a trespass, and when defendant revoked it, it became the duty of plaintiff to remove his fence, and if the defendant, within a few days thereafter, removed the same without doing any unnecessary damage thereto, he was doing nothing but what it was

plaintiff's duty to do, and certainly did not lay himself liable to the penalty sued for in this case.

The question as to what is a reasonable notice depends upon the circumstances of each case. In Shipley v. Fink, 62 N. E. 360, 2 L. R. A. (N. S.) 1002, the defendant, under an agreement, had erected a building on another's land. Subsequently the license was revoked, but while the parties were negotiating for a new contract relating to the same, the defendant entered upon the premises and began to tear down the building. The court said the plaintiff was entitled to reasonable opportunity to remove the building without unnecessary injury to it, and that ten days, however, would be a sufficient period therefor. Now that was a building, and as soon as plaintiff was notified, negotiations regarding its removal, or an agreement for payment of rent on the land on which it stood, were considered, and while the same were pending, the defendant commenced to tear down the building. That was an action for specific performance of a contract plaintiff claimed to have for the conveyance of the land on which the building stood. The court refused the prayer of the petition, but said that plaintiff should be given ten days to remove his building. ·

The case at bar, however, is one for a penalty, and we do not believe the penalty can be recovered from the owner of premises on which a fence was constructed under a license which has been revoked by the owner, and where the only act complained of is the removal of a few panels of fence which the owner removed after having given three or four days' notice to the licensee, and who, in the meantime, made no effort to remove the same.

The plaintiff calls our attention to the case of Sims v. Field, 74 Mo. 139, and similar cases, holding that where a party has consented to a connecting fence, he cannot arbitrarily remove his own fence without any previous notice to the occupant of the adjoining

land, but must give him a reasonable notice, so that he may protect his own premises. This case, as well as the others cited, treats of a mutual arrangement between adjoining landowners, by which they have jointly constructed fences for mutual protection, and hold that under such circumstances, one of the parties cannot annul the agreement or understanding without giving the other party reasonable notice to enable him to protect himself.

The judgment will be reversed. All concur.